**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EDWARD J. WEDELSTEDT,

      Petitioner-Appellee,

v.

RON WILEY, Warden, Federal
Correctional Institution - Camp
Florence, Colorado,

      Respondent-Appellant.

No. 06-1461

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 06-CV-1337-WYD)**

John M. Hutchins, Assistant United States Attorney (Troy A. Eid, United States
Attorney, with him on the briefs), Office of the United States Attorney, Denver,
Colorado, for Appellant.

Kerri L. Ruttenberg (Henry W. Asbill with her on the brief), LeBoeuf, Lamb,
Greene & MacRae, Washington, D.C., for Appellee.

Before **MURPHY**, **MCWILLIAMS,** Senior Judge, and **HARTZ**, Circuit Judges.

**MURPHY**, Circuit Judge.

# I. INTRODUCTION

Petitioner-Appellee Edward J. Wedelstedt, a federal inmate housed at the Federal Prison Camp in Florence, Colorado, applied to the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Wedelstedt challenged the lawfulness of Bureau of Prisons ("BOP") regulations prohibiting his transfer to a Community Correctional Center ("CCC") until ten percent of his sentence remains. Wedelstedt argued the regulations, codified at 28 C.F.R. §§ 570.20 and 570.21, are inconsistent with clear congressional intent articulated in 18 U.S.C. § 3621(b). Adopting the reasoning of the Second, Third, and Eighth Circuits, which previously considered the same issue and invalidated the regulations, the district court granted Wedelstedt's writ and ordered the BOP to consider placing Wedelstedt in a CCC without regard to the BOP regulations. *Wedelstedt v. Wiley*, No. 06-cv-01337, 2006 WL 2475268, at *5 (D. Colo. Aug. 24, 2006).[1]

Respondent-Appellant, Ron Wiley, Warden of the Florence Federal Correctional Institution, filed a timely appeal. Respondent contends the

---

[1]The Second, Third, and Eighth Circuits are the only circuit courts to have considered the BOP regulations at issue and each invalidated them. *See Levine v. Apker*, 455 F.3d 71, 87 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 237 (3d Cir. 2005).

Additionally, the First and Eighth Circuits previously concluded a 2002 BOP policy, which similarly prohibited CCC transfer prior to the last part of a prisoner's term, constituted an impermissible restriction on the BOP's discretion in prisoner assignment. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17, 28-29 (1st Cir. 2004).

regulations are premised on a reasonable interpretation of 18 U.S.C. § 3621(b) and § 3624(c), are permissible under *Lopez v. Davis*, 531 U.S. 230 (2001), and were promulgated in accordance with the Administrative Procedure Act.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court adopts the reasoning of the Second, Third, and Eighth Circuits. The BOP regulations contradict Congress' clear intent that all inmate placement and transfer decisions be made individually and with regard to the five factors enumerated in 18 U.S.C. § 3621(b). The regulations at issue supplant the five factors and, therefore, are invalid. This court, accordingly, **affirms** the district court's grant of Wedelstedt's habeas writ and its order that Wedelstedt be considered for CCC placement without regard to 28 C.F.R. §§ 570.20 and 570.21.

## II. BACKGROUND

A.    Regulatory and Statutory Provisions

Section 570.21 of the BOP's regulations states the BOP "will designate inmates to community confinement only . . . during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). Section 570.20 establishes the purpose of the regulations as a "categorical exercise of discretion for designating inmates . . . to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community." 28 C.F.R. § 570.20(a). The BOP's notice accompanying the publication of its

-3-

proposed rules explained that its prohibition on placing inmates in CCCs prior to the final portion of their sentences was consistent with considerations articulated by Congress in 18 U.S.C. § 3621(b), sentencing policy articulated by Congress in 18 U.S.C. § 3624(c), Congress' general interest in deterring future criminal conduct, and policies articulated by the United States Sentencing Commission in § 5C1.1 of the Sentencing Guidelines. *See* Community Confinement, 69 Fed. Reg. 51213, 51214-15 (proposed Aug. 18, 2004) (to be codified at 28 C.F.R. pt. 570).[2] The BOP identified 18 U.S.C. § 3621(b) as authorizing this categorical exercise of discretion, and viewed the promulgation of a categorical rule as permissible under *Lopez v. Davis*, 531 U.S. 230 (2002). *Id.* at 51213; *see also* Community Confinement, 70 Fed. Reg. 1659, 1659, 1661 (Jan. 10, 2005) (codified at 28 C.F.R. pt. 570).

The statute Respondent alleges authorized the promulgation of §§ 570.20 and 570.21, 18 U.S.C. § 3621(b), confers qualified discretion on the BOP to designate a prisoner's place of imprisonment. Section 3621(b) provides in relevant part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, . . . , considering—
> (1) the resources of the facility contemplated;

[2]For a more thorough discussion of the BOP's adoption of the current ten-percent policy in 2002 and the promulgation of its current regulations, see *Fults*, 442 F.3d at 1089-91, and *Woodall*, 432 F.3d at 240.

(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence—
     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
     (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Section 3624(c), the provision on which Respondent relies for the position that CCC facilities can only be considered as "places of imprisonment" for the last portion of a prisoner's sentence, addresses the BOP's affirmative obligations to a prisoner as the prisoner nears the end of a term of imprisonment. The statute directs

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c). The relationship between the two statutes and between § 3621(b) and the regulations at issue lie at the core of the dispute before this court.

B.      Facts and Procedural History

Wedelstedt pleaded guilty in the Northern District of Texas to one count of interstate transportation of an obscene movie for sale and distribution and one count of conspiracy to defraud the United States by paying a cash bonus to an employee.  Wedelstedt was sentenced to thirteen months' imprisonment followed by one year of supervised release.  Upon the recommendation of the district court and the government, the BOP placed Wedelstedt at the Federal Prison Camp in Florence.[3]  Wedelstedt reported to the Florence facility on June 1, 2006.  Because of anticipated good-time credit, Wedelstedt's projected release date is May 9, 2007.  At a meeting held to establish Wedelstedt's pre-release plan, the BOP told Wedelstedt he would be eligible for transfer to a CCC on April 6, 2007, the date on which thirty-three days, or ten percent, of his sentence would remain.

Wedelstedt filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the district court for the District of Colorado.  He contended the BOP's regulations impermissibly restrict the discretion Congress gave the BOP in 18 U.S.C. § 3621(b) to consider transferring him to a CCC prior to the last ten percent of his sentence.[4]  Respondent asserted the regulations are valid as a

_____

[3]The record is silent as to whether the sentencing judge recommended Wedelstedt serve any portion of his sentence in a CCC.  *See* 18 U.S.C. § 3621(b)(4)(B).

[4]Wedelstedt's § 2241 application also alleged the manner in which the BOP regulations were promulgated violated the Administrative Procedure Act.

(continued...)

-6-

permissible exercise of the BOP's discretion under § 3621(b) and § 3624(c).  The

district court granted the writ and Respondent appealed, again asserting the

validity of the BOP regulations.

C.      Other Circuits' Precedent and the District Court's Decision

        1. Second, Third, and Eighth Circuit Decisions

The district court relied heavily in its decision to grant Wedelstedt's habeas

petition on decisions from the Second, Third, and Eighth Circuits.  *Levine v.*

*Apker*, 455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir.

2006); *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005).  The

*Levine*, *Fults*, and *Woodall* courts each determined that the BOP regulations at 28

C.F.R. §§ 570.20 and 570.21 contradicted the clear and unambiguous

congressional intent expressed in 18 U.S.C. § 3621(b).  *Levine*, 455 F.3d at 87;

*Fults*, 442 F.3d at 1092; *Woodall*, 432 F.3d at 249.  Each court interpreted

§ 3621(b) to clearly and unambiguously require the BOP to consider the five

factors set out in § 3621(b)(1)-(5) when making placement and transfer decisions,

and interpreted the CCC placement restrictions in § 570.21 as preventing the BOP

from fully considering of each of these factors.  *Levine*, 455 F.3d at 87 ("Section

3621(b) establishes clear parameters for the BOP's exercise of discretion in

---

[4](...continued)
Because it determined the BOP regulations were contrary to clear congressional
intent, the district court did not reach Wedelstedt's Administrative Procedure Act
claim.

-7-

making prison placements and transfers. By sorting prisoners' eligibility for [CCCs] only according to the portion of time served, the BOP has unlawfully excised these parameters from the statute."); *Fults*, 442 F.3d at 1092 ("[T]he BOP's regulation necessarily conflicts with § 3621(b) by excluding an entire class of inmates—those not serving the final ten percent of their sentences—from the opportunity to be transferred to a CCC."); *Woodall*, 432 F.3d at 249 ("[W]e are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable."). Under *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984), these courts ruled the regulations were invalid. Because each court determined § 3621(b) includes a clear assertion of congressional intent, each rejected the BOP's argument that, under *Lopez v. Davis*, 531 U.S. at 242, the promulgation of §§ 570.20 and 570.21 was a permissible exercise of the BOP's categorical rulemaking authority. *Levine*, 455 F.3d at 85; *Fults*, 442 F.3d at 1091; *Woodall*, 432 U.S. at 246-47.[5]

---

[5]The statutory provision at issue in *Lopez* was 18 U.S.C. § 3621(e)(2)(B), which provides the BOP with discretion to reduce a nonviolent offender's sentence by up to one year after the prisoner successfully completes a substance abuse treatment program. *Lopez v. Davis*, 531 U.S. 230, 232 (2001). The BOP promulgated a regulation to categorically exclude from the possibility of early release any inmate whose current offense was a felony that involved the carrying, possession, or use of a firearm or other dangerous weapon. *Id.* (citing 28 C.F.R. § 550.58). The *Lopez* Court interpreted the statute authorizing the BOP rule to

(continued...)

-8-

2. The District Court Decision

The district court was guided by the reasoning of *Levine*, *Fults*, and *Woodall* in invalidating the BOP's categorical refusal to consider placing an inmate in a CCC until the last ten percent of his sentence. *Wedelstedt*, 2006 WL 2475268, at *4. The court recognized the regulations were enforced in two other district court decisions from the District of Colorado.[6] *Id.* at *3 (citing *Montoya v. Rios*, No. 05-cv-00606, 2005 WL 3271489 (D. Colo. Nov. 30, 2005); *Hurley v. Sherrod*, No. 05-cv-01177 (D. Colo. Sept. 21, 2005)). The district court in this case, however, concluded that Congress spoke directly to the "precise question at issue" and determined, accordingly, no deference was owed to the BOP's interpretation of 18 U.S.C. § 3621(b). *Id.* at *3 (citing *Chevron*, 467 U.S. at 842). The district court distinguished *Lopez* on the same ground as the *Levine*, *Fults*, and *Woodall* courts. *Id.* at *4.

---

[5](...continued)
contain a gap that the regulation reasonably filled in accordance with *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984). *Id.* at 242.

[6]This court's opinion will resolve several conflicting decisions of the Colorado district court. *Compare Bichon v. Wiley*, No. 06-cv-0011 (D. Colo. Nov. 13, 2006), *Montoya v. Rios*, No. 05-cv-00606, 2005 WL 3271489 (D. Colo. Nov. 30, 2005), *and Hurley v. Sherrod*, No. 05-cv-01177 (D. Colo. Sept. 21, 2005), *with Bassett v. Wiley*, No. 06-cv-00374 (D. Colo. Sept. 25, 2006), *appeal docketed* No. 06-1514 (10th Cir. Nov. 28, 2006), *and Pflum v. Wiley*, No. 06-cv-00404 (D. Colo. Sept. 25, 2006).

**III. ANALYSIS**

A.    Standard of Review and Governing Legal Principles

This court's review of district court statutory interpretation is *de novo*.
*Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992).  This court
first looks at the statute to determine whether Congress "has spoken directly to
the precise question at issue" in such a way that its intent is clear and
unambiguous.  *Chevron*, 467 U.S. at 842.  If congressional intent is clear and
unambiguous, our inquiry is complete.  *Id.* at 842-43.  We owe no deference to
the agency's interpretation and must give effect to the statute as Congress
intended it.  *Id.*  If the statutory scheme involves an ambiguity or silence on the
precise question at issue, however, we must next consider whether the agency's
interpretation is permissible.  *Id.* at 843.  A reviewing court must uphold an
agency regulation that relies on a reasonable construction of an ambiguous or
silent statute as long as the regulation is not "arbitrary, capricious, or manifestly
contrary to the statute."  *Id.* at 844.

Although this court is not bound by other circuits' precedent, *see United
States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986), we are guided in our
decisions by their well-reasoned and thoughtful opinions.  *See Owens v. Miller* (*In
re Miller*), 276 F.3d 424, 429 (8th Cir. 2002) ("'[W]e strive to maintain
uniformity in the law among the circuits, wherever reasoned analysis will allow
. . . .'").  This court joins the Second, Third, and Eighth Circuits in concluding 28

C.F.R. §§ 570.20 and 570.21 impermissibly conflict with the clear and unambiguous congressional intent articulated in 18 U.S.C. § 3621(b) and are, therefore, invalid. *Levine*, 455 F.3d at 87; *Fults*, 442 F.3d at 1092; *Woodall*, 432 F.3d at 237. Our conclusion is the result of an analysis of the relevant statutory language and an examination of the BOP regulations to determine whether they are consistent or inconsistent with § 3621(b)'s statutory mandate.

B.     Statutory Language

An analysis of statutory language begins with the statute's text. *Levine*, 455 F.3d at 80. Section 3621(b) requires the BOP to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The statute gives the agency discretion in making this designation by stating the BOP may assign the prisoner to "any available penal or correctional facility" meeting minimum health and safety standards. *Id.* This delegation of discretion, however, is cabined by further mandatory direction to the BOP to "consider[]" the five factors enumerated in the statute when making its designation. *See id.* § 3621(b)(1)-(5).[7] The statute's use of the word "and" between the fourth and fifth factors provides a clear indication that all five factors are to be considered. *Accord Levine*, 455

---

[7]Although we need not look at legislative history when statutory language is clear, *Levine*, 455 F.3d at 82, the legislative history associated with 18 U.S.C. § 3621(b) confirms that Congress intended the BOP to consider the five factors prior to designating a place of imprisonment. *See id.* (citing S. Rep. No. 98-225 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3324-25); *Woodall*, 432 F.3d at 245-46.

F.3d at 81; *Fults*, 442 F.3d at 1092; *Woodall*, 432 F.3d at 245. The statute, furthermore, delegates to the BOP the ability to "direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). Transfer decisions must also, however, be made with "regard for the same matters" set out at § 3621(b)(1)-(5). *Id.* The *Levine* and *Woodall* courts undertook a more rigorous textual analysis which we adopt but need not replicate here. *See Levine*, 455 F.3d at 80-82; *Woodall*, 432 F.3d at 245-46.

Respondent asserts 18 U.S.C. § 3621(b) is ambiguous if read alone. He contends this provision should, instead, be read in combination with 18 U.S.C. § 3624(c), a more specific provision signaling Congress' intent that CCCs and other means of community confinement be used only at the end of a prisoner's sentence. In support of this argument, Respondent directs this court's attention to the dissenting opinions in several of the circuit courts that have addressed the issue. *See Fults*, 442 F.3d at 1093 (Riley, J., dissenting); *Woodall*, 432 F.3d at 251 (Fuentes, J., dissenting); *Elwood v. Jeter*, 386 F.3d 842, 847-48 (8th Cir. 2004) (Riley, J., dissenting). Aside from referencing the congressional "policy" articulated in § 3624(c), however, Respondent provides no support for the position that Congress intended § 3624(c) to modify or limit the BOP's placement discretion under § 3621(b). Nowhere does Respondent explain why or how § 3621(b) is incomplete or ambiguous unless it is read in context with § 3624(c).

After considering the language of § 3621(b) and the relationship between its qualified grant of discretion and § 3624(c)'s affirmative obligation, this court sees no conflict between these statutory provisions. The statutory command in § 3621(b) stands alone as a clear and unambiguous articulation of congressional intent regarding the process by which the BOP should make placement and transfer determinations. *Accord Levine*, 455 F.3d at 82; *Woodall*, 432 F.3d at 246. Although § 3624(c) surely imposes an affirmative obligation on the BOP, whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, § 3624(c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration. *See Prows*, 981 F.2d at 469 (interpreting § 3624(c) as imposing a mandatory obligation on the BOP to facilitate a prisoner's pre-release transition, but explicitly stating § 3624(c) does not affect the agency's discretion in determining an individual prisoner's place of imprisonment prior to the pre-release period); *accord Woodall*, 432 F.3d at 250 ("[Section] 3624[(c)] does not determine when the BOP should *consider* CCC placement, but when it must *provide* it."); *Elwood*, 386 F.3d at 847 ("Under § 3621(b), the BOP *may* place a prisoner in a CCC for six months, or more. Under § 3624(c) the BOP *must* formulate a plan of pre-release conditions." (emphasis added))*; Goldings v. Winn*, 383 F.3d 17, 26 (1st Cir. 2004) (same). In this court's view, § 3624(c) has no bearing on whether §§ 570.20 and 570.21 are

-13-

consistent with the § 3621(b) statutory scheme for BOP placement and transfer

determinations.

Section 3621(b) articulates clear and unambiguous congressional intent that

all placement and transfer determinations be carried out with reference to each of

the five factors enumerated in § 3621(b)(1)-(5).[8]  In promulgating regulations

pursuant to this statute, the BOP must not contradict Congress' clear intent.

*Chevron*, 467 U.S. at 843 n.9 ("The judiciary . . . must reject administrative

constructions which are contrary to clear congressional intent.").  Accordingly, if

28 C.F.R. §§ 570.20 and 570.21 are inconsistent with § 3621(b), this court must

determine them to be invalid.

C.     Relationship Between 18 U.S.C. § 3621(b) and 28 C.F.R. §§ 570.20 and
       570.21

Section § 570.20(a), the policy statement explaining the BOP's ten-percent

rule, defines the rule as a "categorical exercise of discretion for designating

inmates to community confinement."  28 C.F.R. § 570.20(a).  Section 570.21(a)

then provides that the BOP "will designate inmates to community confinement

only as part of pre-release custody and programming" and only "during the last

---

[8]The Second Circuit concluded the BOP may consider other factors in addition to five enumerated in the statute, but that it must, at a minimum, consider all five factors.  *See Levine*, 455 F.3d at 82 n.6.  Like the Third Circuit, we agree that whether the BOP may consider other factors in addition to the five factors enumerated in the statute, is "separate and unrelated to the question whether it can ignore altogether the very factors delineated by Congress in the governing statute itself."  *Woodall*, 432 F.3d at 247.

ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a). The regulations, therefore, add a threshold requirement to any placement or transfer decision the BOP might make under 18 U.S.C. § 3621(b). As long as an inmate has more than ten percent of his sentence left to serve (or as long as ten percent of an inmate's remaining sentence exceeds the regulation's six-month maximum), the BOP will categorically refuse to consider whether the five statutory factors would, nonetheless, weigh in favor of earlier CCC placement. This categorical refusal to consider the five statutory factors is in direct conflict with the clear congressional command that the factors be considered if a transfer is sought or recommended. Based on the foregoing reasoning, the district court and each of the three circuit courts to consider the question determined these regulations to be inconsistent with the clear and unambiguous congressional intent articulated in § 3621(b) and, therefore, invalid under *Chevron*'s first step. *See Levine*, 455 F.3d at 87; *Fults*, 442 F.3d at 1090; *Woodall*, 432 F.3d at 249; *Wedelstedt*, 2006 WL 2475268, at *4.

Because he attacks the premise that § 3621(b) is clear and unambiguous, Respondent urges this court to apply a reasonableness standard under *Chevron*'s second step. Respondent's argument is essentially that, when § 3621(b) and § 3624(c) are read in tandem, the statutory scheme as a whole contains gaps that the BOP regulations reasonably fill. As discussed above, however, there is nothing in the language of either § 3621(b) or § 3624(c) to suggest these

-15-

provisions are inconsistent or contain gaps when read together, nor is there any contradiction in congressional intent or policy when these two provisions are read separately. Moreover, as stated above, the language of § 3621(b) is clear and unambiguous. This court need not ask or consider, therefore, whether the agency's interpretation of the statute is reasonable. *Chevron*, 467 U.S. at 843. As the "final authority on issues of statutory construction" it is our duty to reject administrative regulations that are inconsistent with clear congressional intent. *Id.* at 843 n.9.

Respondent also attempts to justify the regulations as permissible under the Supreme Court's decision in *Lopez v. Davis*, arguing *Lopez* permits the promulgation of a categorical rule governing inmate placement and transfer decisions because the rule addresses an issue of "general applicability." *See Lopez*, 531 U.S. at 244. Like the other circuit courts that have considered this argument, this court rejects it. The Supreme Court in *Lopez* held that agencies have the authority to promulgate categorical rules even under statutory regimes that call for individualized determinations. *Lopez*, 531 U.S. at 241-42. *Lopez* makes clear, however, that an agency's authority to promulgate categorical rules is limited by clear congressional intent to the contrary. *Id.* at 243. In other words, *Lopez* applies only when Congress has not spoken to the precise issue and the statute contains a gap. *Id.* at 242 (explaining its analysis falls within *Chevron*'s reasonableness inquiry because "Congress has enacted a law that does

-16-

not answer 'the precise question at issue'"). The *Lopez* Court was careful to state that 18 U.S.C. § 3621(e)(2)(B), the provision at issue in that case, did not identify any criteria for the BOP to use in either granting or denying early release to individual nonviolent offenders. *Id.* Section 3621(b), in contrast, enumerates five factors, including three that are specific to the individual prisoner, which must be considered prior to any placement or transfer decision. *See* § 3621(b)(1)-(5); *accord Levine*, 455 F.3d at 85, *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 247. In determining that *Lopez* did not control their analysis of §§ 570.20 and 570.21, the Second, Third, and Eighth Circuits concluded that because § 3621(b) contained explicit, inmate-specific factors to guide inmate placement and transfer decisions, § 3621(b) did not contain a gap similar to the statutory provision in *Lopez*. *Levine*, 455 F.3d at 85; *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d. at 246-47. Because we determine § 3621(b) to be clear, unambiguous, and distinguishable from the statutory provision in *Lopez*, we reject Respondent's contention that *Lopez* validates the BOP's categorical rule in 28 C.F.R. § 570.21.

Respondent lastly claims the BOP's categorical rule is permissible because the BOP considered the five factors enumerated in § 3621(b)(1)-(5) when promulgating the regulations. This argument, like Respondent's others, must fail. The statutory language in § 3621(b) clearly indicates the five enumerated factors are to be applied to individual inmates. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of *the prisoner's* imprisonment. The Bureau

may designate any available penal or correctional facility . . . considering [the five enumerated factors]." (emphasis added)). The BOP cannot validate this otherwise invalid regulation by claiming to have categorically considered the five statutory factors during the rulemaking process. The individualized nature of three of the five factors—the nature of the prisoner's offense, the prisoner's history and characteristics, and the sentencing judge's statement—made such consideration impossible. *See Fults*, 442 F.3d at 1092.

## IV. WEDELSTEDT'S REMEDY

This court's determination that the BOP regulations are invalid entitles Wedelstedt to be considered for transfer to a CCC prior to the last ten percent of his sentence. In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. § 3621(b) without regard to the invalid regulations. This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer. The record on appeal does not indicate whether the sentencing court made any statements recommending that Wedelstedt serve part of his sentence in a CCC, nor is it appropriate for this court to consider the arguments made in the parties' briefs about Wedelstedt's character.

## V. CONCLUSION

For the foregoing reasons, this court **affirms** the district court's grant of Wedelstedt's habeas writ and **affirms** the district court's order that the BOP immediately consider whether Wedelstedt should be transferred to a CCC without regard to 28 C.F.R. §§ 570.20 and 570.21.  The mandate shall issue forthwith.

06-1461, *Wedelstedt v. Wiley*

**HARTZ**, Circuit Judge dissenting:


I respectfully dissent. Were it not for the fact that two-thirds of the circuit judges and a number of the district judges who have considered the matter have reached a conclusion contrary to mine, I would have thought this an easy case.

The statute at issue, 18 U.S.C. § 3621(b), provides as follows:

> **Place of imprisonment**.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> (1)  the resources of the facility contemplated;
>
> (2)  the nature and circumstances of the offense;
>
> (3)  the history and characteristics of the prisoner;
>
> (4)  any statement by the court that imposed the sentence—
>
> (A)  concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B)  recommending a type of penal or correctional facility as appropriate; and
>
> (5)  any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economical status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner

from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

I have no difficulty agreeing with the panel majority that this language requires the Bureau of Prisons (BOP) to consider the five listed factors (although it may also consider others) in deciding where to house a prisoner. The issue is whether this duty requires the BOP to address each of the factors with respect to the individual prisoner in every case. I think not. The BOP performs its statutory duty if it reasonably considers a factor when promulgating a general rule.

The five factors set forth in § 3621(b) are to be used in making housing determinations in a wide variety of circumstances. Some factors will be more important, perhaps much more important, than other factors in certain circumstances. Experience, or common sense, may reveal that in a particular set of circumstances one of the factors—call it factor A—simply cannot overcome the weight of the other factors. Accordingly, there is no need to engage in fact-finding or analysis regarding factor A in individual cases within that set of circumstances. Recognition of that reality is not contrary to a directive to consider all five factors. It is enough that the BOP has considered factor A in that context and determined that the outcome will be the same no matter what the specific facts regarding the factor.

Consider a prisoner sentenced to death for a terrorism offense. The prisoner seeks to be housed in a minimum-security facility. Is it really necessary for the BOP to check the prisoner's file to see whether, under factor (3), he had bright spots in his history or characteristics? I cannot believe that Congress could have intended to require such useless effort.

We should read statutory language as if it were written by human beings. Say the company president sent out a directive stating:

> Managers shall select the appropriate mode of transportation for each trip on company business by a subordinate, considering
> (1)    the cost of the mode of transportation,
> (2)    the travel time using that mode of transportation,
> (3)    the safety of the mode of transportation, and
> (4)    the impact of the mode of transportation on the appearance and functioning of the employee upon arrival at the business destination.

Would the head of the international-business division be fired for insubordination if she orders that anyone traveling to Beijing should travel by jet (not, for example, boat)? Of course not. And if one should read such a mandate in the real world as permitting general rules, I do not see why we should assume that Congress is using similar language in a more rigid, unreasonable manner.

A second, rather different, analogy may also be instructive. The laws of physics, which are entitled to even greater respect than Congressional enactments, may declare that a particular phenomenon—say, the path of a projectile—is governed by a function of five parameters. To calculate precisely the path of a

-3-

projectile, one would need to measure each of those parameters and plug those numbers into the function. It may be, however, that in a particular setting the value of one of the parameters (at least within the range of that parameter that occurs in practice) makes no measurable difference in the path of the projectile. An engineer preparing a manual for those who need to know the projectile's path in that setting would not be failing to consider a binding law of physics by omitting that parameter in the formula provided for calculating the path. The engineer had "considered" the parameter when determining that it could not affect the calculations.

Similarly, it would be consistent with § 3621(b) (although likely beyond the present power of social scientists and computer experts) for the BOP to develop a mathematical function for determining where prisoners should be housed. Section 3621(b) would require that the function depend on at least five parameters (one for each of the factors listed in the statute) and the function would have to be a reasonable application of those factors. The task of the BOP staff assigned to determine a particular prisoner's placement would be to gather all the relevant data (making fact findings on disputed evidence as necessary) and then feed them into the computer to calculate the result determined by the function. But suppose that the BOP observes that in a certain circumstance, such as determining whether a prisoner should be housed on death row, the result does not change no matter how several parameters vary. Surely, the BOP could issue a

regulation that those inconsequential parameters need not be measured in that circumstance. No matter how forcefully the sentencing judge advocated severe punishment for a man convicted of bank fraud, he should not be placed on death row; so factor (4) in § 3621(b), which relates to statements by the sentencing judge, is inconsequential in deciding whether that particular housing is appropriate for someone convicted of that offense. Why bother collecting the data when they have no effect? One would hope that BOP personnel have better things to do.

Therefore, I would conclude that a BOP regulation governing a particular housing choice can be entirely consistent with § 3621(b) even if the regulation does not require consideration in some circumstances of one, or more, of the factors listed in the statute. When experience or common sense shows that the housing decision will be the same no matter what the evidence regarding a particular factor, the BOP need not go through the motions of collecting the evidence and noting that the one factor cannot outweigh the others in the particular circumstance.

I do not believe that I am saying anything new. Indeed, the Supreme Court not long ago said essentially the same thing: "Even if a statutory scheme requires individualized determinations, . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez v. Davis*, 531 U.S.

230, 243-44 (2001) (brackets and internal quotation marks omitted). I am unpersuaded by attempts to exclude that principle from the present context.

There remain, however, further questions whether the BOP regulation at issue in this case, 28 C.F.R. § 570.21, was adopted in accordance with proper procedures and whether the BOP has justified it as a reasonable application of the statutory factors. I would leave those questions for the district court to resolve in the first instance. I would note, however, that the rule appears reasonable. Prisoners may well not benefit from more than six months in a halfway house. And providing a prisoner with the relative freedom of such a setting for more than 10% of his or her sentence would seem to undermine the purpose of imposing the full sentence in the first place.