**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

STEVEN KIENTZ,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 18-3240

———————————————

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:17-CV-04067-SAC)**
———————————————

Roger D. Moore, Rehm, Bennett, & Moore, P.C., LLO, Lincoln, Nebraska, for Plaintiff-Appellant.

Sushma Soni, Attorney (Joseph H. Hunt, Assistant Attorney General, Stephen R. McAllister, United States Attorney, and Alisa B. Klein, Attorney, with her on the brief), U.S. Department of Justice, Washington, DC, for Defendant-Appellee.

———————————————

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **CARSON**, Circuit Judges.

———————————————

**CARSON**, Circuit Judge.

———————————————

A dual status technician occupies a hybrid role—created by Congress under 10 U.S.C. § 10216—that includes a balance of traditionally civilian and traditionally military responsibilities. Dual status technicians are federal civilian employees who

perform "maintenance and repair of supplies or equipment issued to" reserve components of the United States military branches, including the National Guard. 10 U.S.C. § 10216(a)(1)(C). A dual status technician may participate in the Civil Service Retirement System and receive a pension in retirement. This case requires us to consider whether a dual status service technician's civil service pension is "based wholly on service as a member of a uniformed service" under 42 U.S.C. § 415(a)(7)(A). Our jurisdiction to do so arises under 28 U.S.C. § 1291.

## I.

Plaintiff Steven Kientz spent many years as a dual status technician with the Kansas Army National Guard, where he worked as a mechanic on electronic measurement equipment. Plaintiff's position required him to simultaneously serve as a member of the National Guard, a second job with separate pay and separate responsibilities. In retirement, Plaintiff receives a monthly pension payment under the Civil Service Retirement System based on his service as a dual status technician. Plaintiff also receives Social Security retirement benefits based on contributions he made to the Social Security system from his separate pay as a National Guard member. And this matters because the amount of Plaintiff's Social Security retirement benefits depends on how we classify Plaintiff's employment, and specifically his civil service pension in particular, under the Social Security statutory scheme. We begin our analysis with a description of the relevant statutory background.

2

A.

The Social Security Administration (SSA) calculates an individual's Social Security retirement benefits according to a statutory formula. See 42 U.S.C. § 415. The formula determines how much money an individual receives from the SSA in retirement based partially on how much the individual paid into the system via Social Security taxes.[1] See id. From the SSA's perspective, there are two types of civilian employment: covered and noncovered. If an employer withholds Social Security taxes from an individual's paycheck, the individual works in covered employment. See 20 C.F.R. § 404.1001(a)(1). If not, the individual works in noncovered employment. See 42 U.S.C. § 410(a)(5); 20 C.F.R. § 404.1018. And only those who work in covered employment receive the full measure of Social Security retirement benefits because covered employees pay into the Social Security system while noncovered employees do not. See 42 U.S.C. § 415. Noncovered employees (at one time including civil service employees) often receive a pension instead of Social Security retirement benefits because these employees did not pay into the Social Security system. See 20 C.F.R. § 404.1018.

---

[1] Employees and employers generally pay Social Security taxes to fund the "Federal Old-Age and Survivors Insurance Trust Fund." 42 U.S.C. § 401(a). That fund pays out Social Security retirement benefits, administered by the SSA, to qualifying "old-age" beneficiaries based, in part, on beneficiaries' past contributions to the fund. See id.; see also Francine Lipman & Alan Smith, The Social Security Benefits Formula and the Windfall Elimination Provision: An Equitable Approach to Addressing 'Windfall' Benefits, 39 J. Legis. 181, 185 (2013).

In some instances, there are individuals who spend their careers in both covered and noncovered positions.  These people stand to receive both a civil service pension and Social Security retirement benefits.  And such persons could ultimately receive a windfall not available to their peers who worked solely in covered or noncovered positions.  The windfall occurs because of the way the Social Security formula works.  The statutory formula provides persons with lower covered earnings a greater percentage (vis-à-vis what they paid in) of Social Security retirement benefits than persons with higher covered earnings.  See 42 U.S.C. § 415(a)(1)(A)(i)–(iii).  Thus, persons with both covered and noncovered earnings stand to receive a windfall from Social Security.  See id.

To address this inequity in the Social Security system, Congress enacted the Windfall Elimination Provision (WEP).  Social Security Amendments of 1983, Pub. L. No. 98–21, § 113, 97 Stat. 65, 76 (codified at 42 U.S.C. § 415(a)(7)(A)).  The WEP modifies the usual statutory formula to proportionally reduce Social Security retirement benefits for any individual who also receives "a monthly periodic payment"—such as a pension payment—"based in whole or in part upon his or her earnings" for noncovered work.  Id.  But the WEP is not without its own exceptions.

Relevant to this case, Congress decided that certain individuals defending our country as members of the armed forces should not be subject to the reduction.  Thus, Congress created an exception to the WEP for any monthly periodic payment "based wholly on service as a member of a uniformed service."  Id. (we call this the "uniformed services exception").  Thus, a typical military pension does not reduce an

4

individual's Social Security retirement benefits from covered employment under the WEP, even if the individual earned the military pension through noncovered employment. Id.; see also 20 C.F.R. § 404.213(e)(9).

B.

Plaintiff worked as a dual status technician from 1978 to 2007. To obtain and keep the dual status technician position, Plaintiff had to remain a member of the National Guard, wear a military uniform at work, and maintain military fitness standards. 32 U.S.C. § 709(b)(2)–(4), (j)(2). As a member of the National Guard, Plaintiff participated in periodic military training drills separate from his time as a dual status technician. See 32 U.S.C. § 502; 37 U.S.C. § 206.

Plaintiff received separate military pay for his National Guard service, apart from his dual status technician job, from 1978 to 2007.[2] See 5 U.S.C. § 5534. And Plaintiff paid Social Security taxes on those National Guard wages—covered employment. He now receives Social Security retirement benefits based on his contributions to Social Security from his National Guard wages. See 42 U.S.C. § 410(l)(1)(A), (B). At the same time, Plaintiff also receives a military pension from a United States Department of Defense agency based exclusively on his National Guard service.

---

[2] Prior to becoming a dual status technician, Plaintiff served in the active duty of the United States Army from 1972 to 1976. Plaintiff was also on active duty for about two months in 2005 during his National Guard tenure.

5

But for his dual status technician work, Plaintiff received civil service pay because Congress classified dual status technicians as federal civilian employees. 10 U.S.C. § 10216(a)(1). Importantly, the government did not withhold Social Security taxes from Plaintiff's civil service pay—thus rendering it noncovered employment. 42 U.S.C. § 410(a)(6)(A) (1976); 20 C.F.R. § 404.1013(b) (1979). And the dual status technician role enabled Plaintiff to participate in the Civil Service Retirement System—as opposed to a military retirement system—which now provides Plaintiff with a civil service pension. So in retirement, Plaintiff receives two separate pensions from two separate sources: one from the United States Office of Personnel Management under the Civil Service Retirement System based on his earnings as a federal civilian employee, and another for his combined military service (including the National Guard) from an agency of the Department of Defense. But *only* Plaintiff's civil service pension earned from his work as a dual status technician is at issue in this case.

And it was under this backdrop that when Plaintiff filed an application for Social Security retirement benefits, the SSA reduced his benefits by applying the WEP. Specifically, the SSA identified that Plaintiff could receive a windfall from the usual statutory formula because he participated in both covered and noncovered employment during his career. And the SSA determined that Plaintiff's civil service pension from noncovered employment as a dual status technician triggered the WEP and reduced his Social Security retirement benefits accordingly.

Plaintiff requested reconsideration from the SSA, a determination by an administrative law judge, and review by the SSA Appeals Council, but had no luck. He then sought review in federal district court, but the district court agreed with the SSA. The district court concluded that Plaintiff's Social Security retirement benefits were subject to the WEP because his civil service pension was not "based wholly on service as a member of the uniformed service." Plaintiff now appeals.

## II.

We review questions of statutory interpretation de novo, following the same standards as the district court. Wedelstedt v. Wiley, 477 F.3d 1160, 1165 (10th Cir. 2007). When we review an agency's legal determination, that standard is often one of deference. Id. In this case, two types of deference could apply: Chevron deference or Skidmore deference. Chevron v. Natural Resources Defense Council, 467 U.S. 837 (1984); Skidmore v. Swift & Co., 323 U.S. 134 (1944). Under Chevron deference, we defer to an agency's reasonable interpretation of an ambiguous statute that the agency is responsible for implementing. See Carpio v. Holder, 592 F.3d 1091, 1096 (10th Cir. 2010). Under Skidmore deference, we afford an agency's informal interpretation of a statute some measure of "respect according to its persuasiveness." United States v. Mead Corp., 533 U.S. 218, 221 (2001). In this case, the SSA does not ask for Chevron deference but instead argues that we should afford Skidmore deference to its interpretation.

In either instance, though, we first look "at the statute to determine whether Congress 'has spoken directly to the precise question at issue' in such a way that its

7

intent is clear and unambiguous." Wedelstedt, 477 F.3d at 1165 (quoting Chevron, 467 U.S. at 842); see also John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank, 510 U.S. 86, 109 (1993) (explaining that not even Skidmore deference "is due to agency interpretations at odds with the plain language of the statute itself"). "If congressional intent is clear and unambiguous, our inquiry is complete." Wedelstedt, 477 F.3d at 1165. In that circumstance, we "owe no deference to the agency's interpretation and must give effect to the statute as Congress intended it." Id.

For the reasons discussed below, we conclude the plain language of the uniformed services exception, in combination with the relevant statutory context, resolves the question before us. See infra Part III. We therefore do not reach whether to afford deference to the SSA's interpretation of the relevant statute because our inquiry begins and ends with the text. See Wedelstedt, 477 F.3d at 1165.

III.

The single issue in this case is whether Plaintiff earned his dual status technician pension "based wholly on service as a member of a uniformed service." 42 U.S.C. § 415(a)(7)(A). Plaintiff contends the dual status technician position is "so irreducibly military in nature" that the uniformed services exception applies to insulate his Social Security retirement benefits from the WEP (and therefore from reduction). By this, Plaintiff means that his civil service pension is based wholly on his service in the National Guard because, among other things, Congress required Guard membership for him to hold the dual status technician position. One court of appeals has agreed with Plaintiff's position. Petersen v. Astrue, 633 F.3d 633 (8th

8

Cir. 2011) (concluding that a pension payment based on a dual status technician's service met the uniformed services exception to the WEP).

The SSA, on the other hand, contends that the dual status technician position is not wholly military in nature and, therefore, Plaintiff did not earn his pension from that position based wholly on service as a member of the National Guard. By this, the SSA means that Plaintiff earned his civil service pension in his capacity as a federal civilian employee. And Plaintiff's role as a dual status technician was distinct from his role as a National Guard member, for which he earned separate pay and separate retirement benefits. One court of appeals has agreed with the SSA's position. Martin v. Soc. Sec. Admin., Comm'r, 903 F.3d 1154 (11th Cir. 2018) (concluding that a dual status technician's Social Security retirement benefits were subject to the WEP because his civil service pension was not "based wholly on service as a member of the uniformed services"). In coming to our own answer, we consider the plain language and structure of the uniformed services exception, context of the full statutory scheme, and characteristics of Plaintiff's role in our analysis. See Hamer v. City of Trinidad, 924 F.3d 1093, 1103 (10th Cir. 2019) (observing that "the meaning of statutory language, plain or not, depends on context," so we look to "the specific context in which that language is used" and "the broader context of the statute as a whole").

To understand the breadth of the uniformed services exception, we must first define key terms in the statutory provision. See Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise

9

defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them."). The uniformed services exception applies to monthly periodic payments "based wholly on service as a member of a uniformed service." 42 U.S.C. § 415(a)(7)(A)(ii). We afford "wholly" the ordinary meaning of "entirely" or "exclusively." American Heritage Dictionary of the English Language 1463 (1981) (hereinafter American Heritage).[3] As used in the Social Security Act, the term "service" means employment or work. See 42 U.S.C. § 410(a) (defining covered "employment" as "any service performed" that meets a specified criteria). We also afford the word "as" in the phrase "service as a member of a uniformed service" the ordinary meaning of "in the role, capacity, or function of." American Heritage at 76. Finally, the statute defines "member of a uniformed service" to include "any person appointed, enlisted, or inducted in a component of the Army . . . including a reserve component." 42 U.S.C. § 410(m).[4]

---

[3] See Antonin Scalia & Bryan A. Garner, A Note on the Use of Dictionaries, 16 Green Bag 2d 419, 427 (2013) (listing the American Heritage Dictionary of the English Language as one of "the most useful and authoritative for the English language generally and for law" among "contemporaneous-usage dictionaries -- those that reflect meanings current at a given time" (id. at 423)).

[4] Elsewhere, Congress clarifies that a "reserve component" includes the "Army National Guard of the United States." 38 U.S.C. § 101(27)(F). The SSA does not dispute—and we agree—that Plaintiff was a "member of a uniformed service" based on his membership in the National Guard when he concurrently held the dual status technician position.

Next, we look to the grammatical structure of the uniformed services exception. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989) (explaining that courts should consider "the grammatical structure of the statute" in statutory interpretation); see also Scalia & Garner, supra, at 140 (explaining that the "rules of grammar govern" statutory interpretation "unless they contradict legislative intent or purpose"). The uniformed services exception contains several prepositions. See Bryan A. Garner, The Redbook: A Manual on Legal Style ¶ 10.46 (2002) (explaining that a preposition "is usually positioned before a noun, pronoun, or nominative phrase or clause and relates its subject to another word in the sentence"). Most important to our inquiry, Congress used "as" as a preposition, and "member" serves as the object of that preposition. 42 U.S.C. § 415(a)(7)(A)(ii). Therefore, "as a member" is a prepositional phrase that describes the type of work that a monthly periodic payment must be based on to qualify for the uniformed services exception. See id.; Chicago Manual of Style § 5.173 (16th ed. 2010) ("A prepositional phrase consists of a preposition, its object, and any words that modify the object."). The provision further specifies that qualifying service must be as a member "of a uniformed service" based on Congress's use of the preposition "of." See 42 U.S.C. § 415(a)(7)(A)(ii). Likewise, "on" is a preposition that forms the prepositional phrase "based wholly on service." See id. "On" also modifies the monthly periodic payment by describing the underlying basis for a qualifying payment. See id. And the adverb "wholly" modifies the verb that immediately precedes it—"based"—to

11

further describe the nature of work that qualifies for the uniformed services exception.  See id.

In context, the prepositional phrases establish the full criteria for a payment—the principal object of the provision—to qualify for the uniformed services exception. First, the prepositional phrase "based wholly on" restricts a qualifying payment to a specific reason.  See id.  And that reason or basis is "service," specifically service "as a member" of an identifiable group.  See id.  Finally, the provision identifies that group as "a uniformed service."  See id.  Together, the prepositional phrases in the statute demonstrate that only payments Plaintiff receives based exclusively on his work in the capacity of a uniformed service (National Guard) member fit under the uniformed services exception.  See Martin, 903 F.3d at 1164 (agreeing that "as," in context, "appears to limit the uniformed services exception only to payments for work performed in one's capacity or role as a member of the uniformed services"). Put another way, any pension payment that Plaintiff receives based on work outside of his exclusive capacity as a National Guard member does not qualify for the uniformed services exception and thus subjects his Social Security retirement benefits to the WEP.  We therefore agree with the Eleventh Circuit that the fact Plaintiff "was a member of a uniformed service at the same time he performed the noncovered employment at issue" is insufficient to qualify for the uniformed services exception.  See id.

We reject the Eighth Circuit's reasoning for several reasons.  For one thing, the statutory text dictates that "the work for which [Plaintiff] now receives civil

12

service [pension] payments—his employment as a dual status technician—must have been performed *in his role* as a member of a uniformed service." Id. (emphasis in original). But the Eighth Circuit opined that "absent from the [uniformed services] exception is a requirement that the service be only in a non-civilian or military duty capacity" and rejected a so-called "military duty requirement." Petersen, 633 F.3d at 637 (internal quantitation marks omitted). That is not how we read the statute. See Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004) (relying on "unmistakably clear language" to interpret a statute even though other courts to consider the subject provision reached opposite results).

Indeed, the statute requires that a qualifying pension-holder's service be "as a member of the uniformed service." 42 U.S.C. § 415(a)(7)(A)(ii). We interpret that phrase to mean the service for which a dual status technician receives a pension payment must have been in the capacity of a National Guard member to qualify for the uniformed services exception. See Martin, 903 F.3d at 1164. Otherwise, "if Congress had intended the uniformed services exception to cover any payments made to someone who had been a member of a uniformed service, it could have accomplished that objective much more simply by excepting payments 'to' a member of a uniformed service." Id. Accordingly, we conclude that Plaintiff's civil service pension payments cannot qualify for the uniformed services exception to the WEP

13

simply because Plaintiff was in a uniformed service—the National Guard—while he held the dual status technician position.[5]

Next, we must determine whether the military characteristics of Plaintiff's dual status technician employment made Plaintiff's service "wholly" as a National Guard member. To that end, we "look to Congress's conception of the dual status technician role, as evidenced by the rest of the statutory scheme." Id. at 1165. In the statute describing the dual status technician role, Congress unambiguously states: "For purposes of this section and any other provision of law, a military technician (dual status) is a *Federal civilian employee . . . .*" 10 U.S.C. § 10216(a)(1) (emphasis added). Elsewhere, Congress reiterated that dual status technicians are "authorized and accounted for as a separate category of *civilian* employees." 10 U.S.C. § 10216(a)(2) (emphasis added). And the very title "dual status" reflects a civilian-military balance of responsibilities. See Martin, 903 F.3d at 1166 (similarly considering the title of the role). So by repeatedly describing the incumbent as a "civilian employee," we observe that Congress expressed its clear intent that a dual status technician does not work wholly as a member of the military in that position. 10 U.S.C. § 10216(a)(1).

---

[5] Although the parties make arguments based on the statute's legislative history, we need not consider the legislative history to interpret the statute in this case. See Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1019 (10th Cir. 1998) (observing that we only look "to the legislative history if the statutory language is unclear").

14

Additionally, dual status technicians—like all federal technicians—are appointed in the civil service and receive the same civil service pay and retirement benefits as other members of the federal civil service. See 5 U.S.C. §§ 2105, 5105, 5332, 5342, 8332(b)(6), 8401(30). Indeed, the Office of Personnel Management pays Plaintiff his monthly pension payments based on his work as a dual status technician under the Civil Service Retirement System, not a military pension system. Conversely, Plaintiff's National Guard unit is a component of the United States Army, and Plaintiff receives that pension payment from the Department of Defense. See 38 U.S.C. § 101(27)(F). Thus, Plaintiff's position as a dual status technician was distinct from his National Guard position based on the civil service status, compensation, and retirement plan he received in the former role.

We recognize that the dual status nature of Plaintiff's position did include some military-specific requirements. Namely, the position required him to maintain membership in the National Guard, hold a specific military grade, and wear the appropriate military uniform while performing his dual status technician role. 32 U.S.C. § 709(b)(2)–(4). Further, a dual status technician's failure to maintain his National Guard membership or required military grade results in the termination of his dual status technician employment. 32 U.S.C. § 709(f)(1)(A); see also Petersen, 633 F.3d at 635 (acknowledging that a dual status technician occupies a "hybrid" role with some aspects more consistent with military employment and other aspects more consistent with traditional civilian employment (citing 10 U.S.C. § 10216(a))).

15

But Plaintiff had many separate responsibilities as a National Guard member that were detached from his dual status technician role. For instance, Plaintiff had to meet certain military requirements, such as assembling periodically for "drill and instruction," for which he received military pay. 32 U.S.C. § 502; see 37 U.S.C. §§ 204(a)(2), 206. A dual status technician fulfills these military service requirements during periods when he is not working as a technician. See Walch v. Adjutant Gen.'s Dep't of Tex., 533 F.3d 289, 291 (5th Cir. 2008) (distinguishing a dual status technician's "full-time civilian position with the Guard, a Monday through Friday job if you will, as a 'federal technician'" from his "traditional National Guard position"). In this case, Plaintiff had to fulfill his National Guard service requirements when he was not working on electronic equipment as a dual status technician. Indeed, if Plaintiff wanted to perform his National Guard duty at a time when he would otherwise be at his dual status technician job, he had to request formal military leave from his dual status technician job for that purpose. See 5 U.S.C. § 6323. Thus, the responsibilities that Plaintiff fulfilled as a National Guard member separate from his dual status technician responsibilities also demonstrates that his two positions were distinct.

As the Supreme Court has reasoned, all National Guard members "must keep three hats in their closets—a civilian hat, a state militia hat, and an army hat—only one of which is worn at any particular time." Perpich v. Dep't of Def., 496 U.S. 334, 348 (1990). Importantly, the uniformed services exception includes the word "wholly" to indicate that a qualifying pension payment must be entirely or

16

exclusively from military service. 42 U.S.C. § 415(a)(7)(A)(ii). The Eighth Circuit necessarily overlooked the word "wholly" to conclude that a pension payment based on a plaintiff's work in a "hybrid" role qualified for the uniformed services exception. See Petersen, 633 F.3d at 636–37 (giving decidedly more weight to the military aspects of the dual status technician role than Congress's characterization of the role as "civilian"). Although there is some overlap, the clear distinctions between Plaintiff's dual status technician position and his National Guard position indicate that Plaintiff did not work wholly as a member of the National Guard at his dual status technician job. See Martin, 903 F.3d at 1164 n.67 ("Just because [the plaintiff] was a member of the National Guard and also worked for the National Guard in his dual status technician capacity does not mean that both roles were performed in his capacity as a member of the Guard.").

Stated differently, Plaintiff's federal civilian employment as a dual status technician was not wholly as a member of the National Guard because Plaintiff cannot simultaneously act wholly in two distinct capacities. See 10 U.S.C. § 10216(a)(1); see also Perpich, 496 U.S. at 348. As the Supreme Court explained, Plaintiff must take off his National Guard hat to put on his civilian dual status technician hat and vice versa. See Perpich, 496 U.S. at 348. He cannot wholly wear both hats simultaneously. See id. Thus, we conclude that Plaintiff's civil service

pension is not "wholly" based on service as a member of a uniformed service, and his

pension payments are therefore subject to the WEP.[6]

Accordingly, we hold that certain National Guard-specific requirements are

not "sufficient to place dual status technicians within the sweep of the [uniformed

services] exception—especially given the provision's use of the word 'wholly.'" See

Martin, 903 F.3d at 1168. Plaintiff's dual status technician work was at least

partially distinct from the performance of his military duties. See Walch, 533 F.3d at

291. And Plaintiff received separate compensation and separate pensions for his

performance of those distinct roles. So Plaintiff's civil service pension payments

from his employment as a dual status technician are not based "wholly on service as a

member of a uniformed service." 42 U.S.C. 415(a)(7)(A). We therefore agree with

---

[6] Plaintiff identifies several cases stemming from Feres v. United States, 340 U.S. 135 (1950), in support of his position that his role was irreducibly military in nature. See 340 U.S. at 146 (barring certain claims brought by servicemembers for injuries "incident to military service"); see, e.g., Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992) (applying the Feres doctrine to bar a National Guard technician's challenge to a National's Guard personnel decision). Feres and its progeny, however, are irrelevant to this inquiry. Those cases merely establish that suits based on injuries suffered incident to military service are generally nonjusticiable, and they do not bear on the interpretation of the uniformed services exception or Plaintiff's specific role. Although Plaintiff's role did not afford him the same employment rights that most civilians enjoy, such is the nature of a dual status role. See Martin, 903 F.3d at 1166 ("Even the use of the title 'dual status' suggests that dual status technicians are employed not just in their capacity as members of the National Guard."). Limited employment rights relative to other civilian employees cannot transform a "dual status" role into a wholly military one.

18

the district court and the SSA that Plaintiff's Social Security retirement benefits are

subject to the WEP.[7]

AFFIRMED.

---

[7] In deciding that Plaintiff's pension earned as a dual status technician does not qualify for the uniformed services exemption to the WEP, we need not address the SSA's argument—which it did not raise before the district court—that Plaintiff's pension is partially based on a short period during which he worked as a purely civilian, non-dual status electronic mechanic before he became a dual status technician. See supra note 2.

We also observe that Plaintiff raises an argument for the first time in his reply brief based on the Equal Protection Clause of the Fourteenth Amendment. As Plaintiff concedes, he did not raise an Equal Protection argument to the district court, nor did he raise the argument in his opening brief. Therefore, Plaintiff has waived this argument, which we decline to address on appeal. See, e.g., In re: Motor Fuel Temperature Sales Practices Litig., 872 F.3d 1094, 1113 (10th Cir. 2017) (observing that "arguments raised for the first time in a reply brief are waived").